**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| RAUL MARTINEZ, Individually and for Others Similarly Situated | **Case No. ________________** |
| v. | Jury Trial Demanded |
| CRANE NXT, CO. | FLSA Collective Action<br>Rule 23 Class Action |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Raul Martinez (Martinez) brings this class and collective action to recover unpaid wages and other damages from Crane NXT, Co. (Crane) for violations of the Fair Labor Standards Act (FLSA), Illinois Minimum Wage Law (IMWL), and Illinois Wage Payment and Collection Act (IWPCA).

2. Crane employed Martinez as one of its Hourly Employees (defined below) in Illinois.

3. Crane pays Martinez and its other Hourly Employees by the hour.

4. Martinez and the other Hourly Employees regularly work more than 40 hours in a workweek.

5. But Crane does not pay them for all their hours worked.

6. Instead, Crane automatically rounds their clock in and clock out punches to the nearest quarter hour for its own primary benefit and to the Hourly Employees' detriment (Crane's "rounding policy").

7. Additionally, Crane pays Martinez and the other Hourly Employees non-discretionary bonuses that it excludes from their regular rates of pay for overtime purposes (Crane's "bonus pay scheme").

8. Crane's rounding policy and bonus pay scheme violate the FLSA and IMWL by depriving Martinez and the other Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for overtime hours worked.

9. Crane's rounding policy violates the IWPCA by depriving Martinez and the other Hourly Employees of earned wages, at their agreed hourly rates, for all hours worked.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has general personal jurisdiction over Crane because Crane maintains its principal place of business in Massachusetts.

13. Venue is proper because Crane maintains its principal place of business in Waltham, Massachusetts, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Crane employed Martinez as a quality control associate from approximately May 2018 until August 2025 in Mt. Prospect, Illinois.

15. Throughout his employment, Crane employed Martinez under its rounding policy and bonus pay scheme.

16. Martinez's written consent is attached as **Exhibit 1**.

17. Martinez brings this class and collective action on behalf of himself and similarly situated Crane employees.

18. The putative FLSA collective is defined as:

> **All hourly employees who worked under Crane's rounding policy and/or bonus pay scheme during the last three years through final resolution of this action (the "FLSA Collective Members").**

19. The putative IMWL class is defined as:

> **All hourly employees who worked under Crane's rounding policy and/or bonus pay scheme in Illinois during the last three years through final resolution of this action (the "IMWL Class Members").**

20. The putative IWPCA class is defined as:

> **All hourly employees who worked under Crane's rounding policy in Illinois during the last 10 years through final resolution of this action (the "IWPCA Class Members").**

21. The FLSA Collective Members, IMWL Class Members, and IWPCA Class Members are collectively referred to as the "Hourly Employees."

22. Crane is a Delaware corporation headquartered in Waltham, Massachusetts.

23. Crane may be served with process through its registered agent: **CT Corporation System, 155 Federal Street, Boston, Massachusetts 02110**.

**FLSA COVERAGE**

24. At all relevant times, Crane was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, Crane was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, Crane was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

27. At all relevant times, Crane had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28. At all relevant times, Martinez and the other Hourly Employees were Crane's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

29. At all relevant times, Martinez and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

30. Crane touts itself as "a $1.4B global company with 5,000 associates worldwide [providing] [i]ndustry leading technologies and services to secure, detect and authenticate" its clients' payment systems.[1]

31. To provide its services, Crane hires workers like Martinez and the other Hourly Employees.

32. To this end, Crane advertises open job positions across its facilities and solicits applications for these positions through its website.[2]

33. Crane classifies Martinez and its other Hourly Employees as non-exempt and pays them by the hour.

34. While job titles and duties may differ, Martinez and the other Hourly Employees are subject to Crane's same or similar illegal policies—its rounding policy and bonus pay scheme—for similar work.

35. For example, Martinez worked for Crane as a quality control associate from

[1] https://www.cranenxt.com/about/our-story/ and https://www.cranenxt.com/our-capabilities/ (last visited March 12, 2026).

[2] https://www.cranenxt.com/join-us/search-job-opportunities/ (last visited March 12, 2026).

approximately May 2018 until August 2025 in Illinois.

36. Martinez's job duties included assessing and inspecting various types of incoming parts needed for currency counting equipment , completing overall machine and equipment inspection, and generally assisting other staff as needed in accordance with Crane's policies and procedures.

37. Crane agreed to pay Martinez approximately $30 an hour.

38. Crane similarly agreed to pay its other employees at specified hourly rates.

39. Throughout his employment, Crane required Martinez to report his "on the clock" hours worked to Crane.

40. Crane's records reflect Martinez's "on the clock" hours each workweek.

41. Martinez typically worked approximately 8 to 10 hours a day and 5 to 6 days a week "on the clock" (40 to 50 hours in a workweek).

42. Other Hourly Employees worked similar 40 to 50 hour a week schedules "on the clock."

43. But throughout his employment, Crane has failed to pay Martinez for all hours worked.

44. Instead, Crane subjects Martinez and its other Hourly Employees to its rounding policy.

45. Specifically, Crane automatically rounds Martinez's and its other Hourly Employees' clock in and clock out punches to the nearest quarter hour for its own primary benefit and to the detriment of the Hourly Employees.

46. And Crane prohibits Martinez and its other Hourly Employees from clocking in for their shifts more than 7.5 minutes before their start times and clocking out more than 7.5 minutes after their end times.

47. Crane takes disciplinary action or threatens to do so if Martinez or other Hourly Employees clock in past their scheduled start time or clock out before their scheduled end time.

48. Likewise, Crane takes disciplinary action or threatens to do so if they clock in after their scheduled start time or clock out before their scheduled end time.

49. Crane further requires and expects Martinez and its other Hourly Employees to perform their normal job duties immediately upon clocking in.

50. By enforcing these policies, Crane ensures its rounding policy benefits Crane to the detriment of Martinez and its other Hourly Employees.

51. Thus, under Crane's rounding policy, Martinez and other Hourly Employees are denied wages, at their agreed hourly rates, for hours worked, and overtime wages for overtime hours during workweeks in which they work more than 40 hours.

52. In addition to its rounding policy, Crane pays Martinez and other Hourly Employees under its bonus pay scheme.

53. Specifically, Crane agrees to pay and subsequently pays Martinez and other Hourly Employees non-discretionary bonuses based on criteria Crane sets.

54. But Crane excludes these non-discretionary bonuses from their regular rates of pay for overtime purposes during workweeks in which these employees earn these non-discretionary bonuses and work in excess of 40 hours.

55. For example, Crane paid Martinez an $866.25 "Incentive Bonus" on February 23, 2024 based on fulfillment of Crane's production goals :

| CO. | FILE | DEPT. | CLOCK | VCHR. NO. | |
|---|---|---|---|---|---|
| 12U | 010194 | 000854 | 004 | 0000074049 | 1 |

CRANE NXT

*CUMMINS-ALLISON CORP*
*852 FEEHANVILLE DR*
*MT PROSPECT IL 60056*
*855-729-2698*

Filing Status: Single/Married filing separately
Exemptions/Allowances:
Federal: Standard Withholding Table

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Incentive Bonus | | | 866.25 | 866.25 |
| Regular | | | | 6,214.08 |
| Overtime | | | | 684.98 |
| Holiday Pay | | | | 689.52 |
| Sick Pay | | | | 466.00 |
| Vacation Pay | | | | 738.00 |
| Gross Pay | | | $866.25 | 9,658.83 |

56. But Crane did not include this bonus in Martinez's regular rate of pay for overtime purposes during the corresponding pay period ending February 18, 2024 (nor any other pay period):

CRANE NXT

Page 1(Con't Next Page)
*CUMMINS-ALLISON CORP*
*852 FEEHANVILLE DR*
*MT PROSPECT IL 60056*
*855-729-2698*

Filing Status: Single/Married filing separately
Exemptions/Allowances:
Federal: Standard Withholding Table

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 29.5201 | 40.00 | 1,180.80 | 7,394.88 |
| Overtime | 44.2801 | 1.00 | 44.28 | 729.26 |
| Holiday Pay | | | | 689.52 |
| Incentive Bonus | | | | 866.25 |
| Sick Pay | | | | 466.00 |
| Vacation Pay | | | | 738.00 |
| Gross Pay | | | $1,225.08 | 10,883.91 |

57. Thus, under its bonus pay scheme, Crane does not pay Martinez and the other Hourly Employees overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

58. Martinez brings his claims as a class and collective action under FED. R. CIV. P. 23 and Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

59. Like Martinez, the other Hourly Employees are victimized by Crane's rounding policy and/or bonus pay scheme.

60. Other Hourly Employees who worked with Martinez indicated they were paid in the same or similar manner, performed similar work, and were subject to Crane's rounding policy and/or bonus pay scheme.

61. Based on his experience, Martinez is aware that Crane's rounding policy and bonus pay scheme were imposed on other Hourly Employees.

62. The Hourly Employees are similarly situated in the most relevant respects.

63. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages at their agreed rates for all hours worked and overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked over 40 in a workweek.

64. The only relevant inquiry is whether the Hourly Employees were subjected to Crane's rounding policy and/or bonus pay scheme.

65. Therefore, the specific job titles or locations of the various Hourly Employees do not prevent class or collective treatment.

66. Rather, Crane's rounding policy and bonus pay scheme render the Hourly Employees similarly situated for the purpose of determining their right to earned wages (at their agreed rates) and overtime wages based on their true regular rates of pay.

67. Crane's records reflect the number of hours the Hourly Employees recorded working each week, "on the clock."

68. Crane's records show it automatically rounded the Hourly Employees' punch in and punch out time to the nearest quarter hour for its primary benefit and to their detriment.

69. And Crane's records show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay for overtime purposes.

70. The back wages owed to Martinez and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

71. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Crane's records, and there is no detraction from the common nucleus of liability facts.

72. Therefore, the issue of damages does not preclude class or collective treatment.

73. Martinez's experiences are typical of the experiences of the other Hourly Employees.

74. Martinez has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

75. Martinez has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Illinois law.

76. Martinez and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

77. Martinez retained counsel with significant experience litigating complex class and collective actions.

78. A class and collective action is superior to other available means for the fair and efficient adjudication of this lawsuit.

79. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Crane will reap the unjust benefits of violating the FLSA, IMWL, and IWPCA.

80. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

81. Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Crane.

82. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

83. Accordingly, a class and collective action is an appropriate method for the fair and efficient adjudication of this lawsuit.

84. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

85. Among the common questions of law and fact are:

(a) Whether Crane rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its primary benefit;

(b) Whether Crane paid the Hourly Employees non-discretionary bonuses;

(c) Whether Crane excluded non-discretionary bonuses from the Hourly Employees' regular rates of pay;

(d) Whether Crane failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

(e) Whether Crane failed to pay the Hourly Employees all their earned wages (at their agreed hourly rates) for all hours worked;

(f) Whether Crane's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

(g) Whether Crane's violations were willful.

86. As part of its regular business practices, Crane intentionally, willfully, and repeatedly violated the FLSA, IMWL, and IWPCA with respect to the Hourly Employees.

87. There are many similarly situated Hourly Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

88. The Hourly Employees are known to Crane, are readily identifiable, and can be located through Crane's business and personnel records.

**CRANE'S VIOLATIONS WERE WILLFUL**

89. Crane knew it employed Martinez and the other Hourly Employees.

90. Crane knew it was subject to the FLSA's overtime provisions.

91. Crane knew the FLSA required it to pay non-exempt employees, including the Hourly Employees, overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

92. Crane knew each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because these employees were required to report their "on the clock" hours via Crane's timekeeping system.

93. Crane knew Martinez and the other Hourly Employees were non-exempt employees entitled to overtime pay.

94. Crane knew it automatically rounded the Hourly Employees' punch in and punch out times to the nearest quarter hour for its own primary benefit and to the Hourly Employees' detriment.

95. Crane knew it paid Martinez and the other Hourly Employees non-discretionary bonuses.

96. Crane knew it was required to include these non-discretionary bonuses in their regular rates of pay.

97. Crane knew these non-discretionary bonuses were not included in Martinez's and the other Hourly Employees' regular rates of pay for overtime purposes.

98. And Crane knew the FLSA requires it to pay Martinez and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

99. Crane's failure to pay Martinez and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

100. Crane knowingly, willfully, and/or in reckless disregard of the FLSA carried out its rounding policy and bonus pay scheme that deprived the Hourly Employees of overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

## COUNT I
## FAILURE TO PAY OVERTIME UNDER THE FLSA
## (FLSA COLLECTIVE)

101. Martinez brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

102. Crane violated, and is violating, the FLSA by employing non-exempt employees, such as the FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 in a workweek.

103. Crane's unlawful conduct harmed the FLSA Collective Members by depriving them of overtime wages they are owed.

104. Accordingly, Crane owes the FLSA Collective Members the difference between the wages actually paid and the required overtime wages actually earned.

105. Because Crane knew or showed reckless disregard for whether its rounding policy and bonus pay scheme violated the FLSA, Crane owes the FLSA Collective Members these wages for at least the past 3 years.

106. Crane is also liable to the FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

107. Finally, the FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL**
**(IMWL CLASS)**

108. Martinez brings his IMWL claim on behalf of himself and the IMWL Class Members pursuant to FED. R. CIV. P. 23.

109. The conduct alleged violates the IMWL. 820 ILCS 105/1, *et seq*.

110. At all relevant times, Crane was an "employer" within the meaning of the IMWL.

111. At all relevant times, Crane employed the IMWL Class Members as covered "employees" within the meaning of the IMWL.

112. The IMWL requires employers, like Crane, to pay employees, including the IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

113. The IMWL Class Members are entitled to overtime pay under the IMWL.

114. Crane violated, and is violating, the IMWL by failing to pay the IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek. *See* 820 ILCS 105/4a.

115. Crane's unlawful conduct harmed the IMWL Class Members by depriving them of the overtime wages they are owed.

116. Accordingly, the IMWL Class Members are entitled to recover their unpaid overtime compensation owed from the 3 years prior to the filing of this Complaint, treble damages, as well as monthly statutory damages, plus interest, attorney's fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT III
## FAILURE TO PAY ALL EARNED WAGES UNDER THE IWPCA
## (IWPCA CLASS)

117. Martinez brings his IWPCA claim on behalf of himself and the other IWPCA Class Members.

118. Crane's conduct violates the IWPCA. 820 ILCS 115/1, *et seq.*

119. At all relevant times, Crane was subject to the IWPCA because Crane was (and is) an "employer" within the meaning of the IWPCA.

120. At all relevant times, Crane employed the IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

121. The IWPCA requires employers, like Crane, to pay employees, including the IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

122. During the course of their employment, Crane agreed to pay each IWPCA Class Member an hourly rate for all the hours of work they performed.

123. Each IWPCA Class Member accepted Crane's offer.

124. But during the course of their employment, Crane failed to pay the IWPCA Class Members for all the time they worked at the hourly rates Crane agreed to pay them because Crane failed to include their total number of hours worked due to Crane's rounding policy.

125. Thus, Crane violated, and is violating, the IWPCA by failing to pay the IWPCA Class Members all their earned wages (at the hourly rates Crane agreed to pay them) for all the hours of work they performed for Crane's benefit.

126. Crane's unlawful conduct harmed the IWPCA Class Members by depriving them of earned wages they are owed.

127. Accordingly, the IWPCA Class Members are entitled to recover their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages, plus interest, attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## JURY DEMAND

128. Martinez demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Martinez individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the Hourly Employees allowing them to join this action by filing a written notice of consent;

b. An Order certifying the putative classes action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Martinez and his counsel to represent the interests of the Hourly Employees;

d. An Order finding Crane liable to the Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e. An Order finding Crane liable to IMWL Class Members for unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages;

f. An Order finding Crane liable to the IWPCA Class Members for unpaid earned wages owed under the IWPCA, as well as monthly statutory damages;

g. A Judgment against Crane awarding Martinez and the other Hourly Employees all their unpaid overtime wages, liquidated damages, treble damages, monthly statutory damages, and any other penalties, at the highest available rates, under the FLSA, IMWL, and IWPCA;

h. An Order awarding attorneys' fees, costs, and expenses;

i. An Order awarding pre- and post-judgment interest at the highest applicable rates; and

j. Such other and further relief as may be necessary and appropriate.

Dated: April 2, 2026

Respectfully submitted,

**GORDON LAW GROUP LLP**

By: */s/ Philip J. Gordon*
Philip J. Gordon
Mass. BBO# 630989
Kristen M. Hurley
Mass. BBO# 658237
585 Boylston St
Boston, Massachusetts 02116
Phone: (617) 536-1800
Fax: (617) 536-1802
pgordon@gordonllp.com
khurley@gordonllp.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Phone: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
5847 San Felipe St., Suite 2400
Houston, Texas 77057
Phone: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR MARTINEZ & THE HOURLY EMPLOYEES**